IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

ADRIENNE MAYFIELD                    *

       Plaintiff,                   *

vs.                                  *

                                        CASE NO. 3:04-CV-09 (CDL)

HART COUNTY SCHOOL DISTRICT and      *
EULIN GIBBS, in his individual
capacity,                            *

       Defendants.                  *


O R D E R

    This employment discrimination case arises from the non-renewal of Plaintiff's contract as the Assistant Principal for Hart County Middle School.  Plaintiff claims she was discriminated and retaliated against by the Hart County School Board because of her race and gender.  Furthermore, Plaintiff claims that her due process and equal protection rights were violated by the Hart County School Board and Eulin Gibbs, the Hart County Middle School Principal and her boss. Defendants seek summary judgment on all of Plaintiff's claims.  For the following reasons, Defendants' Motion for Summary Judgment (Doc. 29) is granted.


BACKGROUND

    The facts viewed in the light most favorable to the Plaintiff are as follows.  Plaintiff, Adrienne Mayfield, was hired by the Hart County School District ("HCSD") in July 2002, as the Assistant Principal of Hart County Middle School ("HCMS").  Although Plaintiff

had no experience as an administrator, Eulin Gibbs, Principal of HCMS, recommended her for the job. Plaintiff is an African-American female. Mr. Gibbs and the Senior Assistant Principal, Richard Sutherland, are Caucasian males.

Plaintiff began her term as Assistant Principal at HCMS in late July, 2002. Both Mr. Gibbs and Mr. Sutherland were at a conference during her first week, so Plaintiff was left with a "To do" list and a list of her long-term duties for the upcoming school year. After Mr. Gibbs and Mr. Sutherland returned, the three administrators met and discussed their assigned duties. Plaintiff claims she was initially assigned two duties that provide additional compensation—coordinator of both the after school remedial program and the summer school program. Mr. Sutherland asked for these duties to be assigned to him because he was in charge of curriculum. Additionally, Mr. Sutherland asked Mr. Gibbs to give Plaintiff full responsibility for building maintenance and custodians. Mr. Gibbs agreed with these changes and, on September 3, 2002, created a revised list of duties.

Plaintiff was supposed to take charge of facility maintenance in October 2002. Throughout the year, Mr. Sutherland continued to make decisions concerning maintenance of the building and control of the custodians. Plaintiff, however, was ultimately responsible for the facility despite Mr. Sutherland's involvement, and any time the facility was not considered up to par she was held responsible.

## I.   Performance Problems

As early as September 20, 2002, Plaintiff was informed that she was not meeting expectations concerning several of her duties.  For example, in a memo, Mr. Gibbs explained to Plaintiff that he felt that (1) Plaintiff did not act maturely in response to the switching of certain duties between her and Mr. Sutherland, (2) Plaintiff did not follow the proper procedure for bus discipline, (3) Plaintiff ignored or resented advice, and (4) Plaintiff failed to put enough time into her job and the after school events.  (Mayfield Dep. Ex. 5, Apr. 25, 2005.)  Similar concerns were expressed to Plaintiff either through memo or email on October 28, 2002, November 10, 2002, January 8, 2003, and January 16, 2003.  (Mayfield Dep. Ex. 7, 10, 11, 13.)

Additionally, several teachers complained to Mr. Gibbs that Plaintiff had poor communication skills and usurped their authority in front of students.  (Mayfield Dep. Ex. 15-27.)  These complaints were reflected in Plaintiff's teacher evaluation.  Plaintiff only received an approval rating of 63% from the sixth grade teachers. [1] (Mayfield Dep. Ex. 14.)

## II.   Evaluation

In early March 2003, Mr. Gibbs completed Plaintiff's annual evaluation.  The evaluation form used by Mr. Gibbs was the Georgia

---

[1]Plaintiff was the sixth grade supervisor.  Therefore, she did not have as much interaction with the seventh or eighth grade teachers who gave her an approval rating of 69%.

Leadership Evaluation Instrument ("GLEI").  Mr. Gibbs, however, did not follow the specific evaluation process outlined by the GLEI. Instead he used elements of the GLEI and his own system—each assistant principal was given a list of duties at the beginning of the year and these duties were periodically discussed and reviewed. Mr. Gibbs used the same evaluation procedure for each of his assistant principals.  Plaintiff received an overall score of "Unsatisfactory" on her annual evaluation.  (Mayfield Dep. Ex. 28.)

In response to this score, Plaintiff wrote a letter to the HCSD Superintendent, Nancy Clark, and requested an official review of her evaluation.  (Mayfield Dep. Ex. 29.)  In this response, Plaintiff claimed that the review contained "fraudulent information" that had been "falsified."  (Mayfield Dep. Ex. 20.)  Ms. Clark required Plaintiff and Mr. Gibbs to come in for a conference.  At that conference, Plaintiff explained that she was accusing Mr. Gibbs of not only purposefully falsifying information on the evaluation in order to hurt her, but also of physically threatening her by coming around his desk at her in a menacing way.

Before this evaluation response, Mr. Gibbs planned to recommend the renewal of Plaintiff's contract.  At the conference, however, Mr. Gibbs changed his mind.  Mr. Gibbs and Ms. Clark told Plaintiff that if she would resign Mr. Gibbs would change her evaluation to "satisfactory" and help her get another job in administration.

4

Plaintiff did not agree to this deal; therefore, Mr. Gibbs declined to recommend Plaintiff for renewal.

DISCUSSION

## I.  Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial.  *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact.  *Id.* at 324.  A fact is material if it "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party.  *Id.*  In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it

5

is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In determining if the parties have met their respective burdens, the Court may draw inferences from undisputed facts. The Court resolves "all reasonable doubts about the facts in favor of the non-movant, and draws all justifiable inferences in his favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Additionally, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988).

## II.  Title VII Claims

Plaintiff claims that she was discriminated against because of her gender and her race and that this discrimination is actionable under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e. First, Plaintiff contends that she was subjected to disparate treatment because of her race and gender and that this disparate treatment resulted in several adverse employment actions. Second, Plaintiff argues that she was harassed and that this harassment was so severe it created a hostile work environment. Finally, Plaintiff asserts a claim for retaliation under Title VII.

A.  <u>Disparate Treatment</u>

In order to bring a claim for disparate treatment based on circumstantial evidence, the Plaintiff must first establish a prima

6

facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If Plaintiff can establish a prima facie case, a presumption of discriminatory intent is created. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden then shifts to the Defendants to articulate a legitimate non-discriminatory reason for the alleged discriminatory behavior. *McDonnell Douglas*, 411 U.S. at 802; *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002). If Defendants carry this burden, the presumption of discrimination is rebutted. *Burdine*, 450 U.S. at 255. The Plaintiff can then still defeat summary judgement by creating a jury question as to whether the Defendants' legitimate non-discriminatory reason is pretext for a discriminatory decision. *McDonnell Douglas*, 411 U.S. at 804; *Rojas*, 285 F.3d at 1342.

In order to establish a prima facie case of race or gender discrimination, Plaintiff must establish (1) that she is a member of a protected class, (2) that she was qualified for the job, (3) that she was subjected to an adverse employment action, and (4) that she was replaced by someone outside her protected class or was treated differently than similarly situated employees. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (2004); *Hawkins v. CECO Corp.*, 883 F.2d 977, 982 (11th Cir. 1989). It is undisputed that Plaintiff is a member of two protected classes. Furthermore, the Court assumes for the purposes of this part of the analysis that Plaintiff was

qualified for her position.  The next question, therefore, is whether Plaintiff suffered an adverse employment action.

### 1.  Adverse Employment Action

Plaintiff argues that she was subjected to an adverse employment action (1) when her contract was non-renewed/she was terminated, (2) when the summer school and after school programs were taken away from her, and (3) when Mr. Gibbs filed write-ups and negative evaluations in her file.  First, Defendants agree that Plaintiff's termination was an adverse employment action.  Second, the Court finds that there is a question of fact as to whether the summer school and after school programs were taken away from Plaintiff. Assuming that these programs, which provide additional compensation, were initially Plaintiff's responsibility and were subsequently taken away, this would constitute an adverse employment action.  *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1237-40 (11th Cir. 2001). Finally, Plaintiff argues that Mr. Gibbs's write-ups and negative evaluations constitute adverse employment actions.  The Court rejects this argument.

Regarding the write-ups and evaluations, Plaintiff fails to specifically identify the documents she contends constitute a "*significant* change in [her] employment status."  *Id.* at 1239 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 760-61 (1998)).  The Court has found in evidence four memos from Mr. Gibbs to Plaintiff concerning her work performance and one unsatisfactory

8

evaluation of Plaintiff.  (Mayfield Dep. Ex. 5, 7, 8, 13, 28.)  None of these documents, however, constitute adverse employment actions because Plaintiff, as a result of the memos and evaluation, suffered no negative consequence.  Plaintiff did not lose any pay, benefits, or suffer from any discipline.  *Davis*, 245 F.3d at 1238 ("It is clear [] that not all conduct by an employer negatively affecting an employee constitutes adverse employment action.")  Additionally, the Eleventh Circuit has explained that "[e]xpanding the scope of Title VII to permit discrimination lawsuits predicated only on unwelcome day-to-day critiques and assertedly unjustified negative evaluations would threaten the flow of communication between employees and supervisors and limit an employer's ability to maintain and improve job performance."  *Id.* at 1242.  Therefore, Plaintiff has suffered only two adverse employment actions—her termination and her loss of the after school and summer school programs.

> ### 2.  *Plaintiff's Replacement and Comparators*

Plaintiff has established that she is a member of a protected class, was presumably qualified for her position, and was subjected to two adverse employment actions.  Therefore, the only remaining element Plaintiff must establish for a prima facie case of discrimination is that she was replaced by someone outside her protected group or was treated differently than similarly situated employees.  *See Hawkins*, 883 F.2d at 982.  The uncontradicted evidence establishes that Plaintiff was replaced by Renee Padgett, a

Caucasian female, when Plaintiff's contract was not renewed for the 2003-2004 school year. Therefore, regarding Plaintiff's termination, a prima facie case of race discrimination is established. Additionally, when the after school and summer school programs were taken away from Plaintiff, they were given to Mr. Sutherland, a Caucasian male. Therefore, regarding the loss of those programs, Plaintiff has established a prima facie case of race and gender discrimination.

As to Plaintiff's gender based termination claim, Plaintiff cannot establish a prima facie case by pointing to her replacement because her replacement was also female. She contends, however, that she can establish a prima facie case of gender discrimination because she was treated differently than similarly situated male employees. In order to support this claim, Plaintiff points to several employees within the HCSD. Only one of Plaintiff's suggested comparators is a male administrator—a Mr. Grimes. Plaintiff asserts generally that Mr. Grimes was an administrator, that complaints were filed against him by staff and parents, and that despite these complaints his contract was renewed by the HCSD. Therefore, Plaintiff argues, Mr. Grimes was a similarly situated employee who was treated differently than Plaintiff.

The Court rejects Plaintiff's contention that Mr. Grimes is a valid comparator. In order for an employee to be similarly situated to Plaintiff, the employee must be "similarly situated in all

relevant respects." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003)(quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997)).  Therefore, the comparator employee should be "involved in or accused of the same or similar conduct" and be "disciplined in [a] different way[]." *Id.*  Additionally, the comparator employee must have "very similar job-related characteristics" to Plaintiff, and be "in a similar situation" to Plaintiff.  *MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991).  Since Mr. Grimes did not have similar job responsibilities and was not accused of similar conduct to Plaintiff, he cannot be a comparator.

First, Mr. Grimes was a principal, not an assistant principal. He therefore had no person of authority at his school recommending that his contract not be renewed.  Second, Mr. Grimes had a two-year contract, not a one year contract.  Therefore, the school board would have had to break his contract to prevent him from coming back his second year.  (Eppinger Dep. 17:16-17:24, June 28, 2005.)  Finally, Mr. Grimes did not accuse a superior of fraud and then have his contract non-renewed.  Therefore, Mr. Grimes is not a similarly situated employee who was treated differently for similar behavior, and Plaintiff has failed to establish a prima facie case of gender discrimination for her termination.

###### 3.   *Legitimate Non-discriminatory Reasons*

Since Plaintiff has established a prima facie case of race and gender discrimination regarding the after school and summer school programs and a prima facie case of race discrimination regarding her termination, the burden shifts to Defendants to articulate legitimate, non-discriminatory reasons for their actions. *Wilson*, 376 F.3d at 1087.

Defendants have met their burden of articulating legitimate, non-discriminatory reasons for taking away the school programs and for terminating Plaintiff.  First, regarding the after school and summer school programs, Mr. Gibbs explained that he never gave those programs to a first year assistant principal because he or she would lack the experience needed to handle those programs.  (Gibbs Dep. I 65:14-65:19, 69:1-69:13, Apr. 26, 2005.)   Additionally, Mr. Sutherland testified that he requested the after school and summer school programs because they dealt with curriculum, and curriculum was Mr. Sutherland's assignment. (Sutherland Dep. 15:11-16:3, July 8, 2005.)

Second, regarding Plaintiff's termination, Defendants' articulated non-discriminatory reason is Plaintiff's unprofessional reaction to her "unsatisfactory" score on her annual evaluation. Initially, Mr. Gibbs planned to recommend renewing Plaintiff's contract.  In response to her unsatisfactory evaluation score, however, Plaintiff accused Mr. Gibbs of fraud and falsifying

12

documents.    Defendants explain that Plaintiff's relationship with Mr. Gibbs was strained before the allegation of fraud.    After this charge and Plaintiff's claim that she was afraid of Mr. Gibbs, Mr. Gibbs determined that his relationship with Plaintiff was irretrievably broken to the point that he could no longer work effectively with her.    Mr. Gibbs therefore recommended the non-renewal of Plaintiff's contract.    These legitimate, non-discriminatory reasons satisfy Defendants' burden.

### 4. Pretext

The burden shifts back to Plaintiff to show that Defendants' reasons for taking away the school programs and for her termination are pretext for discrimination.  *Burdine*, 450 U.S. at 256; *Wilson*, 376 F.3d at 1090.    In order to meet this burden the Plaintiff must present evidence "sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons."  *Schoenfeld v. Babbit*, 168 F.3d 1257, 1269 (11th Cir. 1999).

Plaintiff has presented no evidence from which a reasonable jury could conclude that Defendants' legitimate non-discriminatory reasons for either taking away the summer and after school programs or for her termination are pretext.    Instead, Plaintiff argues generally that there is a question of fact as to whether Plaintiff's poor performance record was stacked against Plaintiff because of her race and gender.    This argument does not address either of Defendants'

13

articulated non-discriminatory reasons.  Plaintiff, therefore, has not sustained her burden of creating a genuine issue of fact as to the question of pretext.  Consequently, summary judgment is granted to Defendants regarding Plaintiff's Title VII disparate treatment claims.

B.  <u>Hostile Work Environment</u>

Plaintiff also claims that she was subjected to a hostile work environment.  For a hostile work environment claim to survive summary judgment, the Plaintiff must first establish a prima facie case of a hostile work environment.  Therefore, the Plaintiff must show (1) that Plaintiff belongs to a protected group; (2) that Plaintiff was subjected to unwelcome harassment; (3) that the harassment complained of was based on her race and/or gender; (4) that "the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) [that the harassment is] a basis for holding the employer liable." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).  Assuming, without deciding, that the first three elements of a prima facie case have been met, Plaintiff's claim for a hostile work environment fails because the harassment was not sufficiently severe or pervasive.

In order for conduct to be severe or pervasive, Plaintiff must show that (1) she subjectively perceived the harassment as severe and (2) that this subjective perception was objectively reasonable.

14

*Mendoza*, 195 F.3d at 1246; *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993).  "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in [] [P]laintiff's position, considering all the circumstances." *Mendoza*, 195 F.3d at 1246 (internal quotation marks and citation omitted). Whether conduct meets this test is determined from looking at the totality of the circumstances.  *Harris*, 510 U.S. at 23.

As an initial matter, Plaintiff appears to have abandoned this claim by failing to respond to Defendants' Motion for Summary Judgment concerning a hostile work environment.  Furthermore, in the Complaint, Plaintiff provided only one example of harassment that she claims caused a hostile work environment.  Plaintiff contends that Mr. Gibbs's statement that he was going to "crack the whip and keep [her] busy" constitutes sufficiently severe harassment.  First, the Court notes that it is questionable whether this type of statement is either race or gender related such that it constitutes discrimination.  *See Mendoza*, 195 F.3d at 1247-48 (questioning whether statements such as "I'm getting fired up" have the proper sexual or gender related connotations to be actionable sex discrimination).  Second, while this comment may have embarrassed Plaintiff, it is not so severe or pervasive as to alter the terms and conditions of Plaintiff's employment.  *See Id.* at 1248-50 (finding conduct such as rubbing an employee's hip to be not sufficiently severe).  Plaintiff has failed to produce evidence of either the

15

severe or pervasive nature of any alleged harassment or how this harassment affected her work performance. Therefore, Plaintiff has failed to establish a prima facie case, and Defendants' Motion for Summary Judgment as to Plaintiff's hostile work environment claim is granted.

    C. <u>Retaliation</u>

    Plaintiff's final claim under Title VII is a claim for retaliation. As in the disparate treatment context, Plaintiff must first establish a prima facie case of retaliation. If Plaintiff establishes a prima facie case, Defendants then have the burden of articulating a legitimate non-discriminatory reason for the challenged action. The Plaintiff can then defeat summary judgment by creating a question of fact as to whether the Defendants' reason is merely pretext for discrimination. *Wright v. Southland Corp.*, 187 F.3d 1287, 1305 (11th Cir. 1999).

    In order to establish a prima facie case of retaliation, Plaintiff must show (1) that she engaged in statutorily protected activity, (2) that she suffered an adverse employment action, and (3) that the adverse employment action is causally related to the protected activity. *Wideman v. Wal-mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998). Plaintiff claims that she engaged in statutorily protected activity when she made complaints to the HCSD Superintendent, an Assistant Superintendent, and two school board

members. [2]   Furthermore, Plaintiff claims that as a result of these complaints she suffered multiple adverse employment actions in that her duties were changed, she lost promotion opportunities, she suffered negative evaluations, and ultimately her contract was non-renewed.   Plaintiff's arguments are without merit.

### 1.   Statutorily Protected Activity

First, Plaintiff has not established that she engaged in any statutorily protected activity.   In order for a complaint to be protected, Plaintiff must show that she complained because she subjectively, in good faith, believed that her employer was engaging in an unlawful employment practice. *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997).   Additionally, Plaintiff must show that this subjective belief was "objectively reasonable in light of facts and record presented." *Id.* (emphasis omitted).

Plaintiff has provided uncontradicted evidence that shows that she complained about differential treatment.   Plaintiff then argues that because "most, if not all, of the Plaintiff's co-equal co-workers were white and/or male, *it must be assumed* that her complaints of being treated differently were based on the fact [that] she was either not white, not male, or both—not a white male."

_____

[2]Defendants assert, and the Court agrees, that Plaintiff's claims are claims of retaliation under the opposition clause of Title VII.  42 U.S.C. § 2000e-3 (a); *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).

(Pl.'s Resp. 38 n.11.) (Emphasis added.)   Plaintiff argues for this assumption because she has presented no evidence that her complaints were actually complaints of differential treatment based on race and gender.   Plaintiff did complain to several HCSD employees, but the testimony of these employees lacks statements that she complained that she was treated differently because she is female or African-American.   Therefore, Plaintiff has not met her burden of showing that she complained because of a good faith subjective belief that she was subjected to discrimination by Mr. Gibbs or the Hart County School Board.   General complaints about working conditions, which are unrelated to race or gender, are not actionable under Title VII.

### 2. Causal Connection

Even if the Court found Plaintiff's activity to be protected, Defendants would still prevail on Plaintiff's retaliation claim because Plaintiff has failed to produce sufficient evidence from which a reasonable jury could conclude that there was a causal connection between that protected activity and any adverse employment action.   In order to establish the causal link requirement, Plaintiff "must at least establish that the employer was actually aware of the protected expression at the time the employer took the adverse employment action against the plaintiff."   *Holifield*, 115 F.3d at 1566.

Plaintiff's only argument concerning causal connection is that, generally, after Plaintiff made complaints, Mr. Gibbs and the Hart

County School Board disciplined her differently than her white and/or male co-workers.   This argument is only relevant to one of Plaintiff's claimed adverse employment actions—that she suffered negative evaluations and discipline which affected her benefits. Plaintiff, however, fails to point to any specific incident where she made a complaint of disparate treatment and was consequently disciplined.   Furthermore, this conclusory statement—that she was disciplined differently at some point after a complaint—does not meet Plaintiff's burden of showing a causal connection.   *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion.").

Additionally, Plaintiff has presented no evidence that Mr. Gibbs knew of any of Plaintiff's complaints.   Plaintiff does not allege that she actually complained to Mr. Gibbs about discriminatory treatment, and the uncontradicted evidence shows that each of the alleged adverse employment actions was executed by Mr. Gibbs. Therefore, Plaintiff has not shown that the employer knew of her complaints at the time of any adverse employment action, and she has failed to establish either the first or third prong of the prima facie case of retaliation.   Defendants' Motion for Summary Judgment is consequently granted as to Plaintiff's claim of retaliation under Title VII.

19

## III.  Title VI Claims

### A.  Discrimination

Plaintiff also claims that she was discriminated against based on her race and that this discrimination is a violation of Title VI of the Civil Rights Act of 1964 ("Title VI").  42 U.S.C. § 2000d. Title VI provides that "[n]o person . . . shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Id.* Title VI, however, is limited in its application to employment practices.  A private right of action for an employment practice arises only when the "primary objective of the Federal financial assistance is to provide employment."  42 U.S.C. § 2000d-3.  Since Plaintiff neglected to provide any evidence that HCSD (1) received Federal funding or (2) that the primary purpose of that funding was to provide employment, Plaintiff's claim that an employment decision by HCSD violates Title VI fails as a matter of law.

### B.  Retaliation

Plaintiff also claims that she was retaliated against in violation of Title VI.  Although Title VI does not specifically prohibit retaliation, it does prohibit intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).  The Supreme Court recently held that language parallel to the Title VI anti-discrimination clause in Title IX of the Education Amendments of

1972, 20 U.S.C. § 1681(a), creates a cause of action for retaliation. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-75 (2005) ("Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action."); *see also Peters v. Jenny*, 327 F.3d 307, 314-19 (4th Cir. 2003) (finding a cause of action for retaliation under Title VI). The Court is persuaded that a private cause of action for retaliation likely exists under Title VI because (1) Title IX was patterned after Title VI, (2) the Supreme Court held that retaliation is a form of intentional discrimination, and (3) Title VI prohibits intentional discrimination. *Jackson*, 544 U.S. at 173-74; *Alexander*, 532 U.S. at 280; *Shotz v. City of Plaintation*, 344 F.3d 1161, 1170 n.12 (11th Cir. 2003) (citations omitted) ("We construe Titles VI and IX *in pari materia* . . . .").

The parties agree that the Title VII analytical framework for retaliation is also properly used for Title VI cases. *Peters*, 327 F.3d at 321. Assuming that Plaintiff has established a prima facie case of retaliation under Title VI because she complained that African-American students were disciplined more harshly than Caucasian students and was later terminated, Plaintiff has provided no evidence that Defendants' legitimate non-discriminatory reasons for Plaintiff's termination are pretextual. Plaintiff's only argument concerning pretext is that there is a question of fact as to whether the Defendants purposefully stacked Plaintiff's disciplinary

21

record because of her race and/or gender. Plaintiff has again misunderstood Defendants' non-discriminatory reason for her termination.

Defendants have admitted that although Plaintiff had a record of poor job performance, Mr. Gibbs was initially going to recommend the renewal of her contract. It was not until Plaintiff accused Mr. Gibbs of fraud and of physically threatening her in a meeting that Mr. Gibbs decided not to recommend her return to HCMS. The uncontested evidence shows that Plaintiff and Mr. Gibbs had a tenuous work relationship before the accusation of fraud and claim by Plaintiff that she was afraid of Mr. Gibbs. These accusations turned this already contentious work relationship into one that was irreparable. Defendants therefore fired Plaintiff not as the result of a stacked disciplinary record, but because of her unprofessional reaction to her evaluation and the subsequent breakdown of the necessary congenial work relationship between a Principal and his Assistant Principal. Since Plaintiff has presented no evidence to show that this legitimate reason for her termination is actually pretext for race or gender discrimination under Title VI, Defendants' Motion for Summary Judgment is granted regarding Plaintiff's Title VI claims.

**IV.  Section 1983 Claims**

Finally, Plaintiff claims that the actions of the HCSD and Mr. Gibbs violated her equal protection rights under the Fifth and

22

Fourteenth Amendments of the Constitution.  She has brought an action pursuant to 42 U.S.C. § 1983 to enforce these rights.  Since the actors in this case are state actors, the Fifth Amendment is not applicable.  *See Rodriguez-Padron v. INS*, 13 F.3d 1455, 1458 n.7.  Therefore, the Court assumes Plaintiff intended to bring a § 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment. [3]

"When section 1983 is used as a parallel remedy for [a] violation . . . of Title VII, the elements of the two causes of action are the same."  *Underwood v. Perry County Comm'n*, 431 F.3d 788, 793 (11th Cir. 2005).  Consequently, Plaintiff's § 1983 claims fail for the same reason Plaintiff's Title VII disparate treatment claims failed—Plaintiff produced no evidence of pretext.  Defendants' Motion for Summary Judgment is granted as to Plaintiff's § 1983 claims.

## V.   Section 1988 Attorney's Fees

Based on the Court's granting summary judgment to Defendants on each of Plaintiff's claims, it is now clear that Plaintiff is not a prevailing party.  Therefore, she is not entitled to attorney's fees

---

[3]To the extent that Plaintiff attempted to bring a procedural due process claim in her Response to Defendants' Motion for Summary Judgment, the Court rejects that claim.  First, Plaintiff failed to bring this claim in her Complaint.  Second, since Plaintiff was a non-tenured educator, she was not entitled to a hearing before the non-renewal of her contract. *Dorsey v. Atlanta Bd. of Educ.*, 255 Ga. App. 104, 106 n.2, 564 S.E.2d 509, 511 n.2 (2002).  Therefore, Plaintiff cannot establish that she was deprived of a property interest without due process.

under 42 U.S.C. § 1988(b), and Defendants are accordingly granted summary judgment on that claim.

CONCLUSION

Defendants' Motion for Summary Judgment (Doc. 29) is granted as to all of Plaintiff's claims.

IT IS SO ORDERED, this 9th day of June, 2006.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

24